State v. Pruett, 24 N. M. 68.

[No. 2137, April 24, 1918.]
## STATE v. PRUETT.

### SYLLABUS BY THE COURT.

1.   Where there is evidence tending to show that deceased made threats against the defendant which were communicated to him, and that the deceased brought about the difficulty and was in fault at the time of the killing, the court must, upon request, instruct the jury upon the subject of such threats.

P. 70

2.   An instruction defining the essential elements of an indictment as to manslaughter, and which omits to state that the killing must have been unlawful and not justifiable, and which is followed by another instruction telling the jury that if they believe from the evidence "that each and all of the above material allegations of the indictment have been established beyond a reasonable doubt" they should then find defendant guilty of voluntary manslaughter, is erroneous.

P. 71

3.   A defendant on trial for homicide who relies upon self defense for acquittal is not required to produce evidence which will satisfy the jury that he acted in self-defence, but only such evidence as will raise in the minds of the jurors a reasonable doubt as to whether he acted in necessary self-defense.                                P. 72

4.   Instruction relative to limitations upon the right of self-defense.                                        P. 73

Appeal from District Court, Union County; Leib, Judge.

James C. Pruett was convicted of voluntary manslaughter, and he appeals.   Reversed and remanded, with instructions to grant a new trial.

See, also, 22 N. M. 223, 160 Pac. 362.

O. P. EASTERWOOD, of Clayton, for appellant.

HARRY L. PATTON, Attorney General, for the State.

State v. Pruett, 24 N. M. 68.

## OPINION OF THE COURT.

ROBERTS, J.  Appellant was tried and convicted in the district court of Union county of voluntary manslaughter, and appeals.

In October, 1914, the appellant accompanied Mrs. Ethel Landreth to the Cross L ranch in Union county. There they met the deceased, who was practically a stranger to appellant. The appellant and Mrs. Landreth went into the apartments of Mr. and Mrs. Crook, the father and mother of Mrs. Landreth, when Cleasy Cheek, the deceased, and various others came in. Cheek had a pistol in his hand and ordered the appellant out of the house with the following remark, ''You see that door; hit it.'' Cheek was disarmed, and as he went out of the room he said to the appellant, ''I will kill you or get you in less than a week.'' No explanation is afforded by the evidence for the action of Cheek. Appellant was engaged in teaching school, and on Saturday after the occurrence just detailed visited the home of Ed Logue, where the appellant had his bedding and various other things. In the afternoon, appellant, as disclosed by the evidence offered on his behalf, took his rifle and went rabbit hunting, and while returning home on the public road met the deceased, and the shooting took place. Appellant was the only eyewitness to the encounter, and testified that he saw the deceased approaching him from the top of the hill. About the time he saw the deceased, the deceased reached for his gun and told appellant he was going to kill him. Appellant told deceased to put up his gun, and after deceased repeated his threat and was trying to get his gun out of the scabbard appellant threw up his gun and shot quickly, causing the horse of the deceased to jump. However, Cheek turned his horse around, got his gun out and up to his shoulder, and was trying to work the lever, still telling appellant he would kill him, when appellant shot him. On the part of the state it was contended that appellant had waylaid deceased and

shot him from behind a clump of bushes. The evidence to this effect was all circumstantial.

Seven alleged errors are discussed by appellant upon which he relies for a reversal. Some of the errors have to do with the weight of the evidence and the refusal of the court to grant a new trial on the ground of newly discovered evidence. As the case must be reversed on other grounds, the points just stated need not be discussed. Upon a new trial appellant will have an opportunity to present the evidence in question.

[1] Appellant requested the court to give three instructions upon the subject of threats. He does not here contend that all three of these instructions should have been given, but insists that some one of the three should have been given to the jury. The seventh instruction requested by appellant reads as follows:

"The court instructs the jury that though mere threats are insufficient to justify a killing as in self defense, if the jury believes that prior to the homicide deceased made threats of a violent nature against the defendant, and the evidence leaves the jury in doubt as to what the acts of the deceased were at the time of the homicide or as to what defendant might properly have apprehended in respect to the intention of deceased, the jury are entitled to consider the threats in connection with the other evidence in determining who was probably the aggressor, and in determining what apprehension might reasonably arise in the mind of defendant from the conduct of the deceased."

This instruction was even more favorable to the state than the law requires, and we fail to understand upon what theory the court refused to give it, or to give some appropriate instruction upon the subject. In the instructions given by the court of its own motion, this phase of the case was not referred to. The law is well settled that where there is evidence tending to show that deceased made threats against the defendant which were communicated to him, and that deceased brought about the difficulty and was in fault at the time of the killing, the court must, upon request, instruct the jury as to the law governing threats. 11 Standard Ency. of

Procedure, 676. In the case of Potter v. State, 85 Tenn. 88, 1 S. W. 614, where the deceased had made threats against the defendant and the defendant justified on the ground of self-defense, the failure of the court to instruct that the threats of deceased communicated and uncommunicated might be looked to by them, the former as tending to show the state of mind of the defendant, the conditions under which he was acting, and to illustrate his conduct and motive, in connection with other facts and circumstances in the case, and the latter as tending to show the animus of the deceased, and to illustrate his conduct and motives, was held error. In that case the defendant did not request an instruction on the subject of threats, but the court held it was the duty of the judge to charge the law applicable to the evidence and give the defendant the benefit of it, and it was held that the defendant was entitled to this charge without demand. In the present case the court was specifically requested to charge on the subject of threats. Other cases holding that it was the duty of the court to have charged on this subject are: White v. Territory, 3 Wash. Ter. 397, 19 Pac. 37; People v. Zigouras, 163 N. Y. 250, 57 N. E. 465; State v. Darling, 199 Mo. 168, 97 S. W. 592; State v. Helm, 92 Iowa 540, 61 N. W. 246; State v. Parker, 60 Or. 219, 118 Pac. 1011; Williams v. State, 67 Tex. Cr. R. 287, 148 S. W. 763; Price v. State, 1 Okl. Cr. 358, 98 Pac. 447. The only authorities relied upon by the state as justifying the refusal are Futch v. State, 137 Ga. 75, 72 S. E. 911, and Ellison v. State, 137 Ga. 193, 73 S. E. 256; but in these cases there was no request for a charge on this subject. For the failure of the court to give an appropriate instruction upon this subject, or one of the tendered instructions, the case must be reversed.

[2] We deem it advisable to discuss such of the other questions raised on this appeal as might probably arise upon a subsequent retrial. The seventh and eighth instructions, given by the court of its own motion, were as follows:

"(7) As to voluntary manslaughter, the material allega-. tions of the indictment as to that are as follows: (a) That Cleasy Cheek was killed; (b) that Cleasy Cheek was killed by the defendant, James C. Pruett; (c) that the killing was effected by means of a certain rifle, commonly called a Winchester, charged and loaded with gunpowder and divers leaden bullets, which the said defendant held in his hand and did discharge and shoot off at and against the said Cleasy Cheek, and did thereby strike and wound the said Cleasy Cheek in such manner that a mortal injury was inflicted upon him which was the proximate cause of his death; (d) that such killing was done by the defendant upon a sudden quarrel or in the heat of passion; (e) that such killing occured in the county of Union and state of New Mexico; (f) that the deceased, Cleasy Cheek, was shot and injured as aforesaid, and died from the effects thereof on the 17th day of October, 1914.

"(8) If you believe from the evidence that each and all of the above material allegations of the indictment have been established beyond a reasonable doubt, you should then find the defendant guilty of voluntary manslaughter."

These two instructions, as given, were incorrect, in that they authorized the conviction of the appellant even though he was justified in killing the deceased. It is contended on behalf of the state that the vice in these instructions was cured by other instructions given by the court on the subject of self-defense. This point need not be determined. The court should not have given the instructions. The vice was clearly pointed out by exceptions stated by counsel for appellant, which should have been sustained by the trial court.

[3] It is also insisted that instruction numbered 15 given by the court was erroneous, in that it required the defendant to affirmatively establish his plea of self-defense; in other words, that he was required to satisfy the jury that he was justified in taking the life of the deceased; whereas, the law is that he is required only to produce such evidence as will raise in their minds a reasonable doubt upon the proposition. The instruction in question is inaptly worded. It begins with the words, "If you believe from the evidence," etc. On behalf of the state it is insisted that the vice in this instruction is cured by other instructions given by the court. When the obejction to this instruction was called

to the attention of the trial court, it should have been corrected. It is not necessary for us to determine whether the objectionable language was cured by other instructions, because upon a second trial the court will doubtless see to it that unobjectionable language is employed. The objection could have been cured by the insertion of the words, ''if you entertain a reasonable doubt.''

[4] It is contended that the court erred in giving instruction numbered 17, which reads as follows:

"The law of self-defense, however, does not imply the right to attack, nor will it permit acts done in retaliation or for revenge, and if you believe from the evidence, beyond a reasonable doubt, that the defendant sought, brought on, or voluntarily entered into a difficulty with the deceased for the purpose of engaging him in a conflict with deadly weapons, then the defendant cannot avail himself of the law of self-defense and you should not acquit him on that ground, and it is for you to determine from all the evidence whether the claim of the defendant that he killed deceased in self-defense is made in good faith or is a mere pretense"

—on the ground that there was no evidence in the case warranting the giving of this instruction, in that such instruction was as to mutual combat. In this appellant is mistaken. The above instruction is a familiar and oft-approved statement that the law of self-defense does not imply the right to attack, nor will it permit acts done in retaliation for revenge, and that one who brings on or voluntarily enters into a difficulty for the purpose of engaging in conflict with deadly weapons cannot avail himself of the law of self-defense. Such an instruction is habitually given in all the courts of this state in connection with all instructions of self-defense, and it would be hard to conceive of any case where self-defense was relied upon wherein such an instruction would not be proper.

Because of the refusal of the court to charge upon the subject of threats, the case will be reversed and remanded to the district court, with instructions to grant the appellant a new trial; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.