878 P.2d 988

STATE of New Mexico,
Plaintiff–Appellee,

v.

Carl R. PARISH, Defendant–Appellant.

No. 21182.

Supreme Court of New Mexico.

July 11, 1994.

David Graham, Taos, for appellant.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

FROST, Justice.

During a violent encounter with local residents, Carl Parish, a visitor to Taos, New Mexico from out of state, shot and killed one of his assailants. We reverse his conviction for voluntary manslaughter and remand for a new trial. Though numerous issues were raised on appeal, we base our decision on two errors in the jury instructions given by the trial court: 1) the jury instructions did not instruct the jury that they must decide whether the killing was unlawful when a claim of self-defense is raised; and 2) the instructions failed to explicitly place the burden upon the State to prove that Defendant did not act in self-defense. We also, for the future guidance of the bench and bar, discuss the potential for confusion if certain jury instructions conflict with one another.

## I. FACTS.

Parish, a college student from Purdue University in Indiana, came to Taos, New Mexico in July of 1991 to attend a photography class. On the evening of July 15, Parish and two other students went out to look for a fourth student who had been gone for what seemed an unduly long time. They came upon a gathering of local residents who were drinking around a bonfire near a bar. The group around the bonfire told the students to leave and directed hostilities at them which were possibly racially or ethnically motivated. Though it is unclear who provoked the violence, Parish and one of his fellow students were chased more than 100 feet, tackled, and beaten by at least three and possibly as many as five of the local residents. The residents would not let them leave and shouted racial epithets. The fight ended when Parish pulled out a gun and shot and killed Paul Vigil, one of his assailants.

Parish made a statement to investigating officers shortly after the incident in which he admitted to the killing, claiming he shot only to make the residents stop beating him and his friend. The next day a criminal information charging second degree murder, voluntary manslaughter, and unlawfully carrying of a deadly weapon was filed in Taos magistrate court. Trial commenced on January 13, 1992. At the close of the evidence, Parish objected to certain jury instructions and offered other instructions which were refused. The jury found Parish guilty of voluntary manslaughter with a firearm and unlawfully carrying a deadly weapon. This appeal comes to us by certification from the New Mexico Court of Appeals so that we may address the issues raised relating to the jury instructions given by the trial court.

## II. STANDARD OF REVIEW.

A jury instruction standing by itself may appear defective. However, when considered in the context of the other instructions given to the jury it may "fairly and accurately state the applicable law." *State v. Hamilton*, 89 N.M. 746, 750, 557 P.2d 1095, 1099 (1976) (citing *State v. Rushing*, 85 N.M. 540, 543, 514 P.2d 297, 300 (1973)); *State v. Rhea*, 86 N.M. 291, 293, 523 P.2d 26, 28 (Ct.App.), *cert. denied*, 86 N.M. 281, 523 P.2d 16 (1974). From the early case *State v. Crosby*, 26 N.M. 318, 191 P. 1079 (1920), we can glean two principles to guide our determination of whether the defective jury instructions gave rise to reversible error: (1) "an erroneous instruction cannot be cured by a subsequent correct one," *Id.* at 324, 191 P. at 1081 (citing *Territory v. Pridemore*, 4 N.M. 275, 281, 13 P. 96, 98 (1887)), and (2) "instructions must be considered as a whole, and not singly," *Crosby*, 26 N.M. at 324–25, 191 P. at 1081 (quoting *United States v. Densmore*, 12 N.M. 99, 106, 75 P. 31, 32 (1904)). These principles address three situations: erroneous instructions, vague instructions, and contradictory instructions. All three of these situations are presented by this case. As *Crosby* states, if an instruction is facially erroneous it presents an incurable problem and mandates reversal. *Crosby*, 26 N.M. at 324, 191 P. at 1081. On the other

hand, if a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity. *Id.* Finally, if the jury is given two contradictory instructions, each of which is complete and unambiguous, reversible error occurs because it is impossible to tell if the error is cured by the correct instruction; furthermore, there is no way to determine whether the jury followed the correct or the incorrect instruction. *State v. Lucero,* 110 N.M. 50, 52, 791 P.2d 804, 806 (Ct.App.) (citing *State v. Horton,* 57 N.M. 257, 261, 258 P.2d 371, 373 (1953)), *cert. denied,* 110 N.M. 44, 791 P.2d 798 (1990); *State v. Cummings,* 57 N.M. 36, 37–38, 253 P.2d 321, 322 (1953). The standard against which the court makes its determination is that of the reasonable juror. *Lucero,* 110 N.M. at 51, 791 P.2d at 805 (finding reversible error if "a reasonable juror might have" misunderstood a jury instruction); *see Francis v. Franklin,* 471 U.S. 307, 315–16, 105 S.Ct. 1965, 1971–72, 85 L.Ed.2d 344 (1985). Reversible error arises if, under the principles just described, a reasonable juror would have been confused or misdirected.

### III. THE INSTRUCTIONS DID NOT IN- STRUCT THE JURY ON A NECES- SARY ELEMENT OF THE CRIME CHARGED: THAT THE ACT WAS UNLAWFUL.

■ Parish claims that the jury instructions failed to explain that, when the issue of self-defense is raised, unlawfulness becomes a necessary element of the crime of voluntary manslaughter. The New Mexico manslaughter statute, NMSA 1978, § 30–2–3(A) (Repl. Pamp.1984), defines voluntary manslaughter as "the *unlawful* killing of a human being without malice . . . upon a sudden quarrel or in the heat of passion." (Emphasis added.) From the New Mexico murder statute, we may infer that "unlawful" means "without lawful justification or excuse." *See* NMSA 1978, § 30–2–1 (Repl.Pamp.1984) (first and second degree murder defined as killing "without lawful justification and excuse" rather than "unlawful killing"). *See State v. Larson,* 94 N.M. 795, 797, 617 P.2d 1310, 1312 (1980). It seems tautological to stress

that unlawfulness is an essential aspect of any crime. Indeed, it is not an element which must be proven unless a defense which justifies the homicide is raised. *See State v. Noble,* 90 N.M. 360, 364, 563 P.2d 1153, 1157 (1977) ("Every killing of a person by another is presumed to be unlawful, and only when it can be shown to be excusable or justifiable will it be held otherwise."). There is no dispute that the facts of this case, if so found by the jury, presented evidence "sufficient to raise a reasonable doubt in the minds of the jury as to whether or not" the defendant acted in self-defense. *State v. Martinez,* 95 N.M. 421, 423, 622 P.2d 1041, 1043 (1981); *State v. Arias,* 115 N.M. 93, 95, 847 P.2d 327, 329 (Ct.App.1993). The instruction on self-defense was appropriate.

■ The jury instructions presented by the trial judge, though properly derived from the Uniform Jury Instructions (U.J.I.), SCRA 1986, 14–101 to –9004 (Recomp. & Cum.Supp.1994), issued by this Court, resulted in reversible error in this case. The trial court's instruction No. 7 on voluntary manslaughter was used directly as prescribed from the U.J.I., SCRA 1986, 14–220:

For you to find the Defendant guilty of Voluntary Manslaughter, as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime.

1. The defendant killed Paul Vigil.

2. The defendant knew that his acts created a strong probability of death or great bodily harm to Paul Vigil.

3. This happened in New Mexico on or about the 15th day of July, 1991.

The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. In the case of voluntary manslaughter the defendant kills after having been sufficiently provoked, that is, as a result of sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter.

Likewise, the instruction No. 11 on self-defense was taken from SCRA 1986, 14–5171:

Evidence has been presented that the defendant killed Paul Vigil while defending himself.

The killing is in self-defense if:

1. There was an appearance of immediate danger of death or great bodily harm to the defendant as a result of being brutally attacked, beaten and kicked by numerous persons;

2. The defendant was in fact put in fear by the apparent immediate danger of death or great bodily harm and killed Paul Vigil because of that fear; and

3. A reasonable person in the same circumstances as the defendant would have acted as the defendant did.

In considering this defense, and after considering all the evidence in the case, if you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.

 Thus, to prove voluntary manslaughter, the State was required to prove the following three elements: (1) The Defendant killed Paul Vigil; (2) the Defendant knew that his acts created a strong probability of death or great bodily harm to Paul Vigil; (3) this happened in New Mexico on July 15, 1991. A claim of self-defense would not cast reasonable doubt upon any of those three elements. It is the element of unlawfulness that is negated by self-defense. Parish, by presenting evidence of self-defense, was claiming the homicide was lawful. The State was thus required to prove that it was *unlawful*. As Judge Pickard said in the certification to this Court, "when self-defense or the defense of others is at issue, the absence of such justification is an element of the offense."

The State relies upon *State v. Noble*, taking out of context the statement that "the absence of excuse or justification is not an element of homicide to be proven by the prosecution." *Noble*, 90 N.M. at 364, 563 P.2d at 1157. But *Noble* concerned a conviction for first degree murder, where no evidence supported a defense of justification or excuse, where no such issues were presented, and where no such jury instruction was requested. *Id.* The Court expressly stated, "When the evidence permits, excuse or justification may be raised as a defense and decided by the factfinder." *Id.*

 The State also relies on commentary in *State v. Bell*, 90 N.M. 134, 560 P.2d 925 (1977), stating that "when the statute creating the offense includes an exception, the prosecution need not negate the exception by either alleging or proving that the defendant does not come within it." *Id.* at 141, 560 P.2d at 932 (citing *Jalbert v. State*, 200 Ind. 380, 165 N.E. 522, 523 (1928)). *Bell* concerned a conviction for criminal sexual penetration. The operative statute at the time defined criminal sexual penetration as unlawfully causing "a person, other than one's spouse, to engage in" a sexual act. NMSA 1953, § 40A–9–21 (Supp.1975). The defendant argued that it was incumbent upon the state to prove that the victim was not his spouse, even though the victim testified "she had never seen defendant before he assaulted her" and the defendant testified "that he had never seen the victim before she appeared in court." *Bell*, 90 N.M. at 140, 560 P.2d at 931. The Court found that the state was under no obligation to disprove the spousal relationship. The Court did not hold that proof of marriage could *never* be an element to be proved; rather, "It simply was not factually at issue *in this case.*" *Id.* (emphasis added). In other words, there was no need to address the matter unless the defendant introduced evidence supporting the element of marriage as a defense. In the same way, the issue of self-defense is not a necessary element in all manslaughter cases. However, once properly raised by the defense, it becomes a necessary issue which the State must disprove in order to establish the crime of manslaughter.

 The statutes providing for the defenses to homicide implicitly require the state to prove that the killing was unlawful, unjustifiable, or inexcusable. The statute explaining when the defendant may be acquitted states, "Whenever any person is prosecuted for a homicide, and upon his trial the *killing shall be found to have been excusable or justifiable,* the jury shall find such person

not guilty and he shall be discharged." NMSA 1978, § 30–2–8 (Repl.Pamp.1984) (emphasis added). In the same way, the justifiable homicide statute states that "[h]omicide is justifiable when ... in the *lawful* defense of himself or of another...." NMSA 1978, § 30–2–7(B) (Repl.Pamp.1984) (emphasis added). The unstated premise is that the claim of lawfulness must be rebutted by the state.

Instruction No. 7, derived from the U.J.I., SCRA 14–220, was simply erroneous in neglecting to instruct on the element of unlawfulness after self-defense evidence had been introduced. Under the principles described above, an erroneous instruction presents an error without cure. *Crosby*, 26 N.M. at 324, 191 P. at 1081. A jury instruction which does not instruct the jury upon "all questions of law essential for a conviction of any crime submitted to the jury," SCRA 1986, 5–608(A) (Repl.Pamp.1992), is reversible error. *See State v. Osborne*, 111 N.M. 654, 656, 808 P.2d 624, 626 (1991) (citing *Jackson v. State*, 100 N.M. 487, 489, 672 P.2d 660, 662 (1983)); *see also State v. Pruett*, 24 N.M. 68, 72, 172 P. 1044, 1046 (1918) (holding jury instructions erroneous which "authorized the conviction of the appellant even though he was justified in killing the deceased").

 The State contends that the other instructions given by the trial court provided the missing information. Under the principles described above, an ambiguous instruction may be cured by other instructions given to the jury. *Crosby*, 26 N.M. at 324, 191 P. at 1081. However, in the case before us, the voluntary manslaughter instruction was not ambiguous. It was erroneous, though perfectly comprehensible on its face. It could not be cured by the other instructions. Moreover, even if the voluntary manslaughter and self-defense instructions are considered together, they do not clearly convey to a reasonable juror that the claim of self-defense negates a specific element of voluntary manslaughter. Nor would a reasonable juror necessarily understand that an acquittal was mandatory if the State could not disprove the self-defense claim beyond a reasonable doubt.

The inadequacy of these instructions is placed in relief by Defendant's proposed jury instruction No. 10, which the trial court rejected as not conforming with the Uniform Jury Instructions:

For you to find the defendant guilty of voluntary manslaughter, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant caused the death of Paul Vigil;

2. *The defendant did not act in defense of himself or others;*

3. The defendant knew that his acts created a strong probability of death or great bodily harm to Paul Vigil;

4. This happened in New Mexico on July 15, 1991.

The difference between second degree murder and voluntary manslaughter is sufficient provocation. In second degree murder the defendant kills without having been sufficiently provoked, that is, without sufficient provocation. Sufficient provocation reduces second degree murder to voluntary manslaughter. [Emphasis added.]

This instruction would have prevented the error.

IV. THE INSTRUCTIONS FAILED TO PLACE THE BURDEN UPON THE STATE TO PROVE THAT DEFENDANT DID NOT ACT IN SELF–DEFENSE.

The jury was not explicitly told that if it found credible evidence to support Parish's claim that the killing was in self-defense, the burden shifted to the State to refute this claim. The jury was not instructed that if the State could not refute self-defense beyond a reasonable doubt, it was required to find Parish not guilty.

 It is settled law in New Mexico that the defendant does not have the burden of proving that the killing was an exercise of the right of self-defense. The defendant's only obligation is to introduce evidence that will raise in the minds of the jurors a reasonable doubt about the matter. *State v. Harrison*, 81 N.M. 623, 630, 471 P.2d 193, 200

(Ct.App.) (citing *State v. Cochran*, 78 N.M. 292, 294, 430 P.2d 863, 865 (1967)), *cert. denied*, 81 N.M. 668, 472 P.2d 382 (1970); *Pruett*, 24 N.M. at 72–73, 172 P. at 1046 (holding erroneous a jury instruction that required the defendant to affirmatively "satisfy the jury that he was justified in taking the life of the deceased; whereas, the law is that he is required only to produce such evidence as will raise in their minds a reasonable doubt upon the proposition").

█ The State cites *Patterson v. New York*, 432 U.S. 197, 207, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977), for the idea that it does "not necessarily follow that a State must prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." The United States Supreme Court established in *Patterson* the constitutionality of "affirmative defenses" that place the burden of the proof on the defendant to prove by a preponderance of the evidence that his crime is in some way exculpated. *Id.* at 207–08, 97 S.Ct. at 2325–26. However, in New Mexico, self-defense is not an affirmative defense. The burden of proof is on the state.

While this matter of proof may be settled law in New Mexico, the Uniform Jury Instructions are quite ambiguous. Before the Uniform Jury Instructions were recompiled in 1986 into their current form, the self-defense instruction explicitly shifted the burden to the State: "The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self-defense." NMSA 1978, U.J.I.Crim. 41.41; *see State v. Edwards*, 97 N.M. 141, 145, 637 P.2d 572, 576 (Ct.App.), *cert. denied*, 97 N.M. 621, 642 P.2d 607 (1981).

█ After the 1986 recompilation, this statement was inexplicably eliminated when U.J.I.Crim. 41.41 was replaced by SCRA 14–5171. While the self-defense jury instruction was substantially changed, the 1986 version retained committee commentary that is largely identical to the commentary included with the 1978 instruction. Some of this commentary is no longer accurate or relevant, including the following:

The committee found no New Mexico cases specifically holding that the state had the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense.... Because these instructions do not require the jury to find the killing was unlawful as one of the elements, a sentence was inserted in this and similar defenses telling the jury that the burden was on the state to prove beyond a reasonable doubt that the defendant did not kill in self-defense.

SCRA 14–5171 committee commentary; *see also*, U.J.I.Crim. 41.41 committee commentary; U.J.I.Crim. 41.41 (Repl.Pamp.1982) committee commentary. Of course, when these sentences were originally written, the U.J.I. did include the burden of proof directive; but these comments have no application to the current instruction. In light of the language of both SCRA 14–5171 and the committee commentary, it is unclear whether the jurors should be specifically told of the shift in the burden of proof in the self-defense instruction. Furthermore, while a reasonable juror might realize that the issue of self-defense requires *some* standard of proof, the instruction as it stands does not explain what that standard is.

█ Applying our principles of evaluation, if a jury instruction will lead to more than one interpretation, then the court will determine if the other jury instructions resolve the ambiguity. *Crosby*, 26 N.M. at 324, 191 P. at 1081. The State claims that the trial court's instruction No. 3, derived from SCRA 1986, 14–5060, fills the void:

The law presumes the Defendant[ ] to be innocent unless and until you are satisfied beyond a reasonable doubt of his guilt.

The burden is always on the State to prove guilt beyond a reasonable doubt. It is not required that the State prove guilt beyond all possible doubt. The test is on[e] of reasonable doubt. A reasonable doubt i[s] a doubt based upon reason ... and common sense—the kind of doubt that would make a reasonable person hesitate to act in the graver and more important affairs of life.

However, this is a general instruction not directed at any element of any crime. Because the instruction places the burden on the State to *"prove guilt* beyond a reasonable doubt," a reasonable juror might not understand that the State must also *disprove a defense* beyond a reasonable doubt. The ambiguity was not cured and thus constituted reversible error.

## V. CLARIFYING POTENTIALLY CONFUSING INSTRUCTIONS.

■ We base our reversal of the manslaughter conviction on the two jury instruction errors just discussed. However, we wish to comment on another point raised by Defendant because of our concern that giving the jury two unambiguous but possibly conflicting instructions might have caused confusion in the minds of the jury. The jury was first asked to decide whether Parish committed second degree murder, which is distinguished from voluntary manslaughter by the element of provocation. *See* § 30–2–1(B). The appropriate jury instruction is SCRA 1986, 14–210, which was the trial court's instruction No. 5:

> For you to find the defendant guilty of second degree murder as charged in Count I, the state must prove to your satisfaction [beyond] a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant killed Paul Vigil;
> 2. The defendant knew that his acts created a strong probability of death or great bodily harm to Paul Vigil;
> 3. *The defendant did not act as a result of sufficient provocation;*
> 4. This happened in New Mexico on or about the 15 day of July, 1991. [Emphasis added.]

Thus, to distinguish between second degree murder and voluntary manslaughter the jury had to find evidence that the Defendant acted as the result of sufficient provocation. The trial court's instruction on provocation came directly from SCRA 1986, 14–222:

> "Sufficient provocation" can be *any action, conduct or circumstances which arouse* anger, rage, *fear,* sudden resentment, terror or other extreme emotions. The provocation must be such as would *affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.* The "provocation" is not sufficient if an ordinary person would have cooled off before acting. [Emphasis added.]

This provocation instruction contains language similar to that of the instruction given by the court on self-defense:

> *The defendant was in fact put in fear* by the apparent immediate danger of death or great bodily harm and killed Paul Vigil because of that fear; and.... *[a] reasonable person in the same circumstances as the defendant would have acted as the defendant did.* [Emphasis added.]

*See* SCRA 14–5171.

Defendant was involved in an angry dispute which was possibly racially motivated; he was chased, attacked, and brutally beaten; he was prevented from leaving; and he pulled out a gun and shot one of his assailants. As Defendant suggests, the jury could easily have found that these circumstances fell within the definition of self-defense. However, upon considering the instruction on voluntary manslaughter, the jury may also have found in these same facts the element of provocation. Both instructions describe a situation which arouses fear in the Defendant; both ask the jury to decide whether a reasonable person would have responded to that fear as did the Defendant. And yet these two instructions are mutually exclusive. Either the Defendant is guilty of having been provoked into voluntary manslaughter or he is innocent because he killed in self-defense.

It is plausible that a reasonable juror might be confused by first finding sufficient provocation to reduce the charge from second degree murder to voluntary manslaughter, and to then discard the concept of provocation and use the same facts that evinced provocation to prove self-defense. The instructions on provocation and self-defense are each accurate and unambiguous. However, as applied to the facts of this case they are confusing. Defendant suggests that it is impossible to determine whether the jury understood that the claim of self-defense supersedes the element of provocation. *See*

---

*State v. Garcia*, 83 N.M. 51, 54, 487 P.2d 1356, 1359 (Ct.App.1971) ("Since we are unable to determine whether the confusing instruction was followed by the jurors, and since this is a homicide case where the theory of self-defense is a critical issue, the confusing instruction was error requiring reversal.") (citing *Horton*, 57 N.M. at 261, 258 P.2d at 374). Any confusion could have been eliminated if the jury had been told that it was *required* to find Defendant not guilty if his conduct met the definition of self-defense. In the future, when a case presents similar circumstances, juries should be so instructed.

## VI. UNDER *WILSON*, THE TYPE OF ISSUE THIS CASE PRESENTS CAN BE RESOLVED IN THE FUTURE BY THE COURT OF APPEALS.

This certification was made by the Court of Appeals before the issuance of this Court's opinion in *State v. Wilson*, 116 N.M. 793, 867 P.2d 1175 (1994). Prior to *Wilson* the Court of Appeals was bound by the doctrine of *Alexander v. Delgado* which broadly declared that the lower court is "governed by the precedents of this [C]ourt." 84 N.M. 717, 718, 507 P.2d 778, 779 (1973). Thus, at the time this case was appealed, it appeared that there was "no authority to question the validity of the uniform jury instructions because they are made 'mandatory' when the Supreme Court adopts them through a general order." *Wilson*, 116 N.M. at 795, 867 P.2d at 1177 (citing *State v. Martin*, 90 N.M. 524, 528, 565 P.2d 1041, 1045 (Ct.App.), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977)). *Wilson* altered the *Alexander* doctrine, freeing the Court of Appeals to "amend, modify, or abolish" Uniform Jury Instructions that have not been specifically addressed by the Supreme Court on appeal. *Wilson*, 116 N.M. at 796, 867 P.2d at 1178. The only restriction is that "[i]f there exists precedent from this Court that specifically addresses the validity of a [Uniform Jury Instruction], the Court of Appeals may not overrule that precedent nor alter or reject that instruction." *Id.* The ambiguities in the Uniform Jury Instructions addressed in this case have not been addressed by this Court. Under *Wilson*, this type of issue can be resolved in the future by the Court of Appeals.

## VII. CONCLUSION.

It is ironic that this Court finds itself in the position of reversing a conviction because the trial court used Uniform Jury Instructions this Court had approved. This illustrates the problems faced by the Court's Uniform Jury Instructions for Criminal Cases Committee in drafting purportedly immutable maxims that are meant to address the capricious vagaries of human conduct. It is humanly impossible to create a written code that anticipates every eventuality. *See Investment Co. v. Reese*, 117 N.M. 655, 875 P.2d 1086 (1994) (citing *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 454, 62 S.Ct. 676, 678, 86 L.Ed. 956 (1942)).

We stated in *Wilson* that "this Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law." *Wilson*, 116 N.M. at 796, 867 P.2d at 1178. That adoption does not preclude this Court from insuring that the rights of individuals are protected.

For the foregoing reasons we reverse the Defendant's conviction for voluntary manslaughter and remand for a new trial on that charge. Defendant's conviction for unlawfully carrying a deadly weapon is affirmed.

IT IS SO ORDERED.

MONTGOMERY, C.J., and BACA, J., concur.