## STATE v. CROSBY.

[No. 2281.    April 23, 1920.]

### SYLLABUS BY THE COURT.

1. In a case where the indictment charges murder in the first degree, and the defendant pleads self-defense, if there is evidence in the case which would make the crime manslaughter, the court properly instructed upon manslaughter.
P. 322

2. Error committed by giving an incorrect instruction is not cured or rendered harmless by the giving of a correct instruction on the same subject.    P. 324

Appeal from District Court, Chaves County; Richardson, Judge.

Stephen Crosby was convicted of manslaughter, and he appeals. Reversed, and a new trial ordered.

O. O. ASKREN and L. O. FULLEN, both of Roswell, for appellant.

There was no evidence justifying submission of instruction on manslaughter and giving same was prejudicial error.

Territory v. Fewel, 5 N. M. 34; Faulkner v. Territory, 6 N. M. 464; Sandoval v. Terr., 8 N. M. 573; Territory v. Archuleta, 16 N. M. 219; Territory v. Hendricks, 13 N. M. 300; Territory v. Padilla, 8 N. M. 510; State v. Phillips, 24 Mo. 490; Territory v. Pridemore, 4 N.M. 275; Territory v. Kimmick, 15 N. M. 178; 2 Michie on Homicide; 1688, 1696, 1655; Stovall v. State, 47 So. 479; Branch v. State, 63 S. E. 714.

Instruction 17 on self defense is erroneous because it instructs the jury that the killing was in necessary self-defense and not from apparent necessity as viewed by a reasonable man.

Wharton on Homicide, Sec. 227; Mullens v. Comm., 67 S. W. 824; Burton v. Comm., 66 S. W. 516; Enright v. People, 39 N. E. 561; State v. Van Sickle, 20 N. M. 190.

ROBERT C. DOW, District Attorney, of Carlsbad, for the State.

The evidence showing that the killing was done upon a sudden quarrel or in the heat of passion, hence instruction on manslaughter was proper.

Territory v. Lynch, 18 N. M. 15; United States v. Dinsmore, 12 N. M. 99; Watson v. State, 21 L. R. A. (N. S.) 18; Territory v. Gonzales, 11 N. M. 301.

Accused cannot complain of instruction submitting theory of lower legree than that which evidence shows.

Wharton on Homicide, 3rd Ed., p. 250; Thompson v. State (Texas), 62 S. W. 919; People v. Burt, 64 N. Y. Suppl. 417.

Instructions must be considered as a whole and apparent incorrection of one instruction will not work a reversal.

Wilson v. Terr. (Arizona), 60 Pac.. 697.

### OPINION OF THE COURT.

RAYNOLDS, J.  The defendant, Stephen Crosby, was indicted in Chaves county for the murder of one Julian Shafer on October 14, 1917.  At the November term of the district court for said county he was found guilty of manslaughter and sentenced.  From the verdict and sentence defendant appealed to this court.

The facts out of which this case arose are substantially as follows:

At the time of the killing the deceased, Julian Shafer, was occupying and using school section 36, the section on which the killing occurred.  Said section had a fence on the south line and a fence on the west, but the fence on the west was not on the true line, but was about 20 feet further west than the true line between sections 35 and 36.  There was no fence on the north and east of the section.  The defendant had leased land, and was entitled to graze and use the same, to the north and east of said section 36, and had leased water from one Graves, who owned the section adjoining 36 on the south.

On Friday afternoon prior to the killing on Sunday, the defendant moved approximately 500 head of cattle from his home to a point north and west of section 36. The cattle remained there until late Saturday afternoon, when his employe, "Doc" Roberts, started the cattle south for water in the direction of the Graves house. On the following morning, Sunday, the defendant and Roberts left the defendant's home to look after the cattle and to ascertain if they had gone to water.  They

rode north and west of section 36 about a mile and a half in the vicinity of a schoolhouse, where they separated, and began to gather what cattle had not gone to water, intending to drive them south to the water. In the meantime the deceased, Shafer, came from his home, about a mile northeast of section 36, and began rounding up defendant's cattle—that is, those cattle that had been to the water and were coming out—and began driving them through a gate in the south fence; it being his purpose to keep them below the south fence of the school section 36, and prevent them from going on said section or across it, or up the road along the fence running north to the lands which Crosby had north of the said section. When the defendant learned that Shafer was driving his cattle out, he and Roberts galloped south down the road until near the gate at the southwest corner of the section, where Shafer, according to the testimony of the defendant and Roberts, intercepted them and began cursing and abusing the defendant, calling him vile names, and stating he would "do him·up." The defendant, according to his testimony, tried to reason with the deceased, and he and Roberts continued in the direction they were going, intending to go around the cattle to drive them along the west fence toward the north. According to defendant's testimony, Shafer said that he would not allow this to be done, and that he was going to kill defendant and do it right then. At this time, according to defendant's testimony, he made a move as though to get a pistol, whereupon the defendant shot him three times and killed him.

There was evidence in the case of threats by the deceased having been made against the defendant, some of which were communicated to him, and some of which were not. The only eyewitness of the killing other than the defendant was Roberts, who corroborated the defendant as to the circumstances of the killing. The plea of the defendant was self-defense, and the case was tried for the state on the theory of deliberate, premediated murder. The testimony showed that no weapon was found upon Shafer, nor was any found in the vicinity of his body

after the killing, nor did the defendant, or the witness Roberts, at any time see a weapon in the hands of Shafer.

The appellant contends that he was not guilty of the crime of manslaughter, of which he was convicted; that under the circumstances he was either guilty of murder in the first degree, or not guilty, having killed the deceased in self-defense.

[1] The appellant assigns numerous errors, relying principally upon the assignment that the court erred in the instruction to the jury in regard to manslaughter for the reason that there was no evidence of this offense, the evidence supporting only a verdict of murder in the first or second degree or in self-defense. Manslaughter is defined by our statute (section 1460, Code 1915) as an unlawful killing of a human being without malice, and being of two kinds—voluntary, upon a sudden quarrel or in the heat of passion; and involuntary, in the comission of an unlawful act not amounting to felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection. It seems to us that instruction in this case was proper and justified by the evidence as shown by the above statement of facts. The defendant testified that the deceased cursed and abused him, and the jury was certainly justified in assuming that the homicide was the result of a sudden quarrel, or the act of killing was done in the heat of passion. As shown by their verdict, they did not believe the state's case in its entirety, nor the defendant's. The state attempted to make out a case of murder in the first degree; the defendant pleaded self-defense, and introduced evidence to that effect. The jury, however, did not take either the state's view of the case nor the defendant's, but apparently believed, as shown by their verdict, that the homicide was committed in the manner which constitutes manslaughter, as defined by the statute and the instructions of the court. The verdict is supported by the evidence, as shown by the record and the foregoing statement taken therefrom.

The appellant cites the case of Territory v. Fewel, 5

N. M. 34, 17 Pac. 569, where an instruction in murder in the third degree was held to be error because there was no evidence in that case to sustain such instruction. The statute law of murder at the time the Fewel Case was tried defined murder in the third degree as killing in a cruel and unsual manner, and the court held there was no evidence of this element of murder in the case. It is distinguishable from the present case, where the charge included manslaughter, and the evidence justified the instruction.

The case of Faulkner v. Territory, 6 N. M. 464, 30 Pac. 905, cited by appellant, is also distinguishable from the present one on the ground that in the Faulkner Case it is specifically held that there was evidence only of murder in the first degree, and the court properly instructed in that degree and no other.

This same distinction is true of Sandoval v. Territory, 8 N. M. 573, 45 Pac. 1125, cited by appellant, where an instruction in a lower degree than the first was asked and refused, the court saying it would be error to give such an instruction because there was no evidence tending to show the lower degree of crime.

Again, in the case of Territory v. Archuleta, 16 N. M. 219, 114 Pac. 285, where the error alleged was the omission to charge on manslaughter, the court on appeal holding that such an instruction would have been improper and erroneous, as the evidence did not warrant this requested instruction.

In the case of Territory v. Hendricks, 13 N. M. 300, 84 Pac. 523, an instruction in third degree murder was given and held to be error because not justified by the evidence. See, also, State v. O. W. Smith, 26 N. M...., 194 Pac. 869, (decided at this term of court, where the authorities are reviewed).

As shown by the above authorities, it is undoubtedly erroneous to instruct upon a degree of crime where the evidence does not tend to sustain such a degree; but in

this case the instruction was proper because there was evidence in the case tending to sustain it and upon which the verdict could be upheld.

The appellant also assigns as error the instruction of the court upon self-defense, which was as follows:

"The defense interposed in this case by the defendant is that he killed the deceased in his necessary self-defense. Upon this subject the court charges you that a person may repel force by force in the defense of his person against one who manifestly intends and endeavors by violence to take his life, or do him great bodily harm, and if a conflict ensues under such circumstances and life is taken, the killing is justifiable.. To justify the killing there must be an apparent design on the part of the assailant either to take the life of the person assailed, or to inflict some great personal injury upon him, and, in addition, there must be then and there imminent danger of such apparent design being accomplished."

Standing alone and unexplained, this instruction is undoubtedly erroneous, as it is capable of the interpretation that the killing, to be justifiable, must have been done by the defendant in his necessary self-defense, or necessarily. State v. Miller, 43 Or. 325, 74 Pac. 658, 660; Steinmeyer v. People, 95 Ill. 383, 384. If this instruction were ambiguous and incomplete, and also capable of another, different, and correct interpretation—that is, that necessary self-defense meant what was apparently necessary to the defendant at the time, as a reasonable man, it might then be cured by the subsequent instruction, which the court gave as follows:

"And if, as a reasonable man, he believes that he is then and there in danger of death or great bodily harm, he is entitled to act in proportion to such appearance to him as a reasonable man, even though afterwards, when the whole matter is over, it may develop that there was no such danger as he then and there, as a reasonable man, supposed to exist."

[2] The Territorial Supreme court has held that an erroneous instruction cannot be cured by a subsequent correct one. Territory v. Pridemore, 4 N. M. (Gild.) 275, 281, 13 Pac. 96. It has also held that instructions must be considered as a whole, and not singly.

"Possibly, if these instructions singled out stood alone, some of them might have been erroneous, but this is not the way

in which the instructions given by the trial court should be looked at. The instructions must be looked at as a whole, and their bearing upon all of the evidence introduced in the 'case must be considered." U. S. v. Densmore, 12 N. M. 99, at page 106, 75 Pac. 31, 32.

"If this instruction stood alone, unconnected with anything else, there would be some plausibility in this argument; but the preceding paragraph describes the assault and the violent breaking, and this instruction refers to what immediately precedes and includes the whole of it. The offense had been therefore clearly defined by the court, and the jury could not have been misled by this paragraph, when considered with the other instructions given in connection with it." Territory v. Gallegos, 17 N. M. 409, at page 413, 130 Pac. 245, 247.

See, also, Territory v. Kimmick, 15 N. M. 178, 106 Pac. 381; Territory v. Cheney, 16 N. M. 476, 120 Pac. 335.

"Instructions must be taken as an entirety—that is, each must be considered in connection with others of the series referring to the same subject and connected therewith—and if, when taken altogether, they properly express the law as applicable to the particular case, no just ground of complaint exists, even though an isolated and detached clause is, in itself, inaccurate or incomplete, and although some of them, taken separately, may be subject to criticism." 14 R. C. L. "Instructions," par. 76.

See, also, Branson's Instructions to Juries, par. 94, and cases cited; Brickwood's Sackett, Instructions, vol. 1, par. 175.

We believe the proper rule to be that error committed in giving an incorrect instruction is not cured or rendered harmless by the giving of a correct instruction on the same subject, and this rule should be applied in the present case, in which the erroneous instruction was complete, unambiguous, and certain. As is said in Steinmeyer v. People, 95 Ill. 383, at page 390:

"It is true the instructions on the same subject, given on behalf of the defendants, laid down the law correctly. But that is not enough. The jury may have disregarded the instructions for the defendants ,and followed those given for the people. They had as much right to follow the one as the other, and it is impossible for the court to say which instructions controlled the deliberations of the jury. If the jury followed the sixth instruction given for the people, as we may

presume from their verdict they did, then they were misled, and defendants were denied the right of self-defense, which was secured to them by the law. We are, therefore, of opinion that the instruction was calculated to deprive the defendants of a fair trial before the jury, and for this reason the judgment will have to be reversed."

See, also, Clay v. State, 15 Wyo. 42, 86 Pac. 17, at page 21; Blashfield on Instructions to Juries, vol. 1, par. 24A, and cases cited.

For the reasons above stated, the case is reversed and a new trial ordered.

PARKER, C. J., and ROBERTS, J., concur.