1996–NMSC–074

930 P.2d 176

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jesus LOERA, Defendant–Appellant.**

**No. 23253.**

Supreme Court of New Mexico.

Dec. 6, 1996.

Gary C. Mitchell, P.C., Gary C. Mitchell, Adam D. Rafkin, Ruidoso, for Petitioner.

Tom Udall, Attorney General, Marcia L. Milner, Assistant Attorney General, Santa Fe, for Respondent.

## OPINION

McKINNON, Justice.

[1] Jesus Loera appeals his convictions from jury verdicts for first-degree murder, three counts of aggravated assault with a deadly weapon, shooting at an occupied vehicle, tampering with evidence, and conspiracy to commit tampering with evidence. The convictions arose from an incident during which Loera, at the age of seventeen, shot numerous times into a moving vehicle occupied by several individuals, killing one of them. As a result of these convictions, Loera was sentenced to life imprisonment plus nineteen and one-half years, with the sentences to run consecutively. Loera raises four issues on appeal: (1) whether the trial court erred in denying his motion to suppress statements given after a *Miranda* warning; (2) whether a mistrial should have been granted for an alleged violation of his right to remain silent; (3) whether the trial court erroneously instructed the jury on his theory of imperfect self-defense; and (4) whether the instructions given on unlawfulness were erroneous. Finding no reversible error, we affirm.

### FACTS AND PROCEEDINGS.

[2] While "cruising" in Las Cruces, Loera and his friends began following a Blazer truck. Loera and others testified at trial to the following version of the facts. They thought that one of the Blazer's occupants could be a gang member who had shot at Loera three weeks earlier. Loera was afraid of this individual, and when he saw a hand extend from a passenger window of the truck, he feared that person was going to shoot at them. After hearing what sounded to him like a shot, out of fear Loera shot back three to five times.

[3] One of the bullets struck Johnny Reyes, killing him. In fact, Loera and his friends were mistaken in their belief that the feared gang member or anyone else with a gun was in the Blazer. The day after the incident Loera was arrested and questioned. At the motion to suppress hearing, Detective Ricky Madrid testified that he "Mirandized" Loera and participated with him in an unrecorded conversation about the incident.

[4] Loera's account was markedly different. He claimed that another officer, not Madrid, arrested him and read him his *Miranda* warnings, and that he twice asked this

officer for a lawyer, only to be ignored and otherwise rebuffed. He further claimed that this officer said that no appointed lawyer would let him talk to the police. Detective Madrid denied Loera's claims, stating that the officer identified by Loera was not present the day of Loera's arrest. Loera stipulated that the next day Madrid advised him of his *Miranda* rights, obtained a signed waiver, and interviewed him on tape. The trial court denied the motion to suppress Loera's statements and later instructed the jury on the issue of voluntariness.[1]

### DISCUSSION OF THE ISSUES.

■ [5] *Failure to make specific findings regarding the admissibility of Loera's statements is not reversible error.* Loera argues that the trial court's failure to make specific findings on disputed facts after the hearing on the motion to suppress constitutes reversible error, relying on *State v. Burk,* 82 N.M. 466, 483 P.2d 940 (Ct.App.), *cert. denied,* 404 U.S. 955, 92 S.Ct. 309, 30 L.Ed.2d 271 (1971); and *State v. Stout,* 82 N.M. 455, 483 P.2d 510 (Ct.App.1971). Under those decisions, to deny the motion a trial court must "fully and independently resolve[ ] the issues against the accused, [and] the judge's conclusions [must be] clearly evident from the record." *Burk,* 82 N.M. at 469, 483 P.2d at 943 (quoting *Jackson v. Denno,* 378 U.S. 368, 378–79, 84 S.Ct. 1774, 1781–82, 12 L.Ed.2d 908 (1964)). In both *Burk* and *Stout,* the trial courts did *not* make express findings to resolve the factual issues. However, in both cases the Court of Appeals held that the trial courts' conclusions were clearly evident from their admission of the defendants' statements into evidence. *See Stout,* 82 N.M. at 456, 483 P.2d at 511.

*Stout* is factually similar to this case. There, the defendant's testimony also conflicted with the testimony of the arresting officer. On appeal, the Court of Appeals found that the trial court had resolved the

conflict against the defendant by stating " 'as a matter of law, there is enough evidence to go to the jury' " and by ruling "that the statement would be admissible at trial." *Id.* This made the court's findings clearly ascertainable: it believed the officer's testimony and not the defendant's. *Id.*

[6] The only issue for decision at the suppression hearing here was whether Loera had been denied his right to counsel, thereby requiring suppression of his subsequent statements. As in *Stout,* by hearing the evidence and ruling that the statements could be admitted, the trial court clearly indicated its belief in Detective Madrid's testimony and not that of Loera. This determination met the *Burk* requirements of making an independent resolution of the issue that was clearly evidenced in the record, and no specific findings were necessary.

[7] *The court properly refused to grant a mistrial on the issue of Loera's right to remain silent.* Loera next argues that a mistrial should have been granted because the prosecutor violated his right to remain silent by asking another detective if, during his investigation of the case, either Loera or another defendant ever stated that they "were shot at" or that a Blazer occupant "fired a gun" before Loera fired his gun. The court sustained a defense objection but denied Loera's motion for a mistrial.

■ [8] Loera's argument ignores the fact that Loera *had not remained silent* during questioning, and the prosecutor's inquiry at trial concerned his and another defendant's statements, not Loera's refusal or failure to make a statement. In addition to making statements during the interrogation sessions, Loera also testified at trial about what prompted him to shoot at the Blazer. The prosecutor's questioning was apparently directed to previous answers made during the interrogation sessions, not at his refusal to answer or to otherwise remain silent.[2]

---

1. Loera does not allege that any of his prior statements were used against him. He does claim that the prosecutor, when questioning a detective, improperly inquired into what he did *not* say in his statements that varied from what he asserted at trial.

2. Loera did not make his previous statements part of the record on appeal, nor did he or the State cite to the transcript for any evidence of what those prior statements may have been. Because Loera was convicted, the State did not appeal from the court's decision to sustain Loera's objection. We presume from the question

Clearly, Loera waived his right to remain silent both during interrogation and at trial. Thus, because Loera waived his right to and did not remain silent either before or during trial, it was not improper to ask the detective questions about the story Loera had previously told police.

[9] The detective's answer could have furnished evidence from which the jury could infer that Loera's self-defense theory had been recently fabricated. *Cf. Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (holding that constitutional bar against use of silence does not apply to cross-examination that inquires into prior inconsistent statements or failure to tell arresting officers same story told to jury); *State v. Olguin,* 88 N.M. 511, 513, 542 P.2d 1201, 1203 (Ct.App.1975) (accord). *See State v. Hennessy,* 114 N.M. 283, 288, 837 P.2d 1366, 1371 (Ct.App.) (explaining that in *Anderson* and *Olguin* the prosecutors properly "were allowed to inquire why, when a defendant chose to make a statement to police, he chose to tell the version he did, rather than the version he asserted to be the truth at trial"), *cert. denied,* 114 N.M. 82, 835 P.2d 80 (1992), *overruled on other grounds sub nom. State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1073 (1993). We hold that the prosecutor's question in this case was not an improper comment on Loera's right to remain silent, and that the trial court correctly denied the motion for a mistrial.

[10] *Giving the erroneous involuntary manslaughter instruction was not reversible error.* Loera argues that the court committed fundamental error by giving "fatally ambiguous and erroneous jury instructions." The court denied Loera's requested instructions that separately instructed the jury on imperfect self-defense. The trial court instructed on self-defense, and also instructed on imperfect self-defense in the involuntary manslaughter instruction, basing its instruction on *State v. Arias,* 115 N.M. 93, 847 P.2d 327 (Ct.App.1993). The instruction stated, in pertinent part:

asked by the prosecutor and from the State's argument on appeal that the prior statements must have contained an account of what happened the evening of the shooting that varied from Loera's testimony at trial. *See Luxton v.*

For you to find the defendant guilty of involuntary manslaughter .. the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant shot at the vehicle containing Johnny Reyes ... with the honest but unreasonable belief in the necessity to defend himself against imminent peril to his life or of great bodily harm....

We have since overruled *Arias,* holding that the lowest degree of homicide that can result from a finding of imperfect self-defense is voluntary manslaughter. *State v. Abeyta,* 120 N.M. 233, 241, 901 P.2d 164, 172 (1995). Thus, the instruction was an erroneous statement of the law.

■ [11] This error, however, would have inured to Loera's benefit, not to his detriment, had the jury found that Loera acted with an honest but unreasonable belief in the necessity to defend himself. The court used virtually the same language as Loera requested although it did not instruct in exactly the same manner as requested. It instructed on both defenses and also advised the jury that it had to "consider each of these crimes ... [and] fully understand the elements of each crime before you deliberate further."

[12] We hold that the involuntary manslaughter instruction sufficiently informed the jury of Loera's imperfect self-defense theory. The jury rejected the defense and found that Loera committed both felony murder and depraved-mind murder. The court's error in allowing the step-down to involuntary manslaughter instead of to voluntary manslaughter was harmless error.

■ [13] *The court properly instructed on the essential element of unlawfulness.* Finally, Loera argues that the court's instructions did not comply with a requirement of *State v. Parish,* 118 N.M. 39, 42, 878 P.2d 988, 991 (1994), that a court must instruct the jury on the essential element of unlawfulness if a self-defense instruction is given. He mistakenly argues that the court failed to

*Luxton,* 98 N.M. 276, 278, 648 P.2d 315, 317 (1982) (stating that when a record on appeal is deficient, this Court "will indulge every presumption in support of the correctness of the trial court's decision").

instruct on this essential element. Each of the five instructions listing the essential elements of the crimes required the jury to find that Loera "did not act in defense of himself or others" before it could convict him of the crime. While the word "unlawful" does not appear in the instructions, this language adequately expresses the requirement of unlawfulness because if Loera acted in self-defense, he acted lawfully. *See Abeyta*, 120 N.M. at 241, 901 P.2d at 172 (stating that "[s]elf-defense is only a justification for a killing, and thus a lawful act, if all the elements necessary for self-defense are met"). The jury was required to find that the State proved to its satisfaction beyond a reasonable doubt that Loera's defense of lawfulness was without merit, meaning he acted unlawfully. Thus, the court properly instructed the jury on the element of unlawfulness.

## CONCLUSION.

[14] The court fully and independently resolved the issue of admissibility against Loera and its conclusions were evident from the record; it properly refused to grant a mistrial because there was no violation of Loera's right to remain silent; the court sufficiently instructed the jury on the theory of imperfect self-defense by giving the erroneous involuntary manslaughter instruction, which was not reversible error; and the court properly instructed the jury on the element of unlawfulness. For these reasons, we affirm the trial court.

[15]   **IT IS SO ORDERED.**

BACA, C.J., and FRANCHINI, J., concur.