1997-NMCA-035

939 P.2d 1081

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Eliseo ACOSTA, Defendant–Appellant.**

**No. 16346.**

Court of Appeals of New Mexico.

March 19, 1997.

Certiorari Granted May 2, 1997.

Tom Udall, Attorney General; Bill Primm, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Douglas W. Baker, Ann Arbor, MI, for Defendant–Appellant.

*OPINION*

ARMIJO, Judge.

1. Defendant appeals his conviction of aggravated battery with a deadly weapon on five grounds: (1) there was fundamental error in the trial court's jury instruction for aggravated battery with a deadly weapon because this instruction failed to include an essential element of the offense; (2) there was fundamental error in the trial court's jury instructions for self-defense and defense of another because these instructions did not clearly place the burden of proof on the State; (3) the failure of Defendant's trial counsel to tender a jury instruction on the less serious offense of negligent use of a deadly weapon amounted to ineffective assistance of counsel; (4) the prosecutor's misconduct during closing arguments denied Defendant a fair trial; and (5) the trial court abused its discretion by denying Defendant's motion for a new trial based on newly discovered evidence. We reverse and remand for a new trial because there was fundamental error in the jury instructions. Because we reverse and remand on issues (1) and (2) relating to instructional error, we do not address the remaining issues raised.

## I. BACKGROUND

2. Defendant was tried and convicted of aggravated battery with a deadly weapon. His conviction arose from a late-night confrontation outside the Cadillacs and Wranglers bar in Hobbs, New Mexico, on August 29, 1993. Defendant presented evidence that the confrontation arose because a group of people, including the victim, Joe Leal, had chased Defendant and his brother and tried to pick a fight with them. Defendant described Leal's group as consisting of fifteen to twenty people. Defendant further testified that he heard one of the men in Leal's group say "go get your gun" and then saw that man hand some car keys to Leal. After Leal walked over to a white car, went inside it and then reemerged, Defendant feared that Leal had retrieved a gun. Panicking because of this fear, Defendant testified that he grabbed his brother's shotgun and fired one "warning shot" toward the ground to protect himself and his brother. A sheriff's

department investigator determined that the shot fired by Defendant travelled level and low to the ground before hitting the white car. Leal was next to the white car and was hit on the arm and neck by birdshot that ricocheted off the car.

3. Defendant was arrested and charged with aggravated battery with a deadly weapon and criminal damage to property. At the close of evidence, the trial court entered a directed verdict of not guilty on the criminal damage to property charge. With regard to the aggravated battery charge, the trial court found that there was sufficient evidence to support a jury instruction on self-defense and defense of another. The trial court gave the jury the uniform jury instruction (UJI) for aggravated battery with a deadly weapon tendered by the prosecutor, SCRA 1986, 14-322, as well as the UJIs for self-defense and defense of another tendered by Defendant. SCRA 1986, 14-5181 & -5182. After the jury was instructed, the prosecutor made closing arguments in which he reiterated the elements in the jury instructions for aggravated battery with a deadly weapon, self-defense and defense of another. Defendant's trial counsel did not object to these arguments or the instructions on which they were premised.

4. The jury found Defendant guilty of aggravated battery with a deadly weapon on May 11, 1994. On July 12, 1994, Defendant filed a motion for a new trial based on newly discovered evidence. On February 9, 1995, Defendant's motion was denied, and the following day the trial court entered its judgment and sentence. Defendant now appeals from the final judgment and sentence.

## II. DISCUSSION

5. Although the trial court followed the applicable uniform jury instructions (UJIs) in this case, Defendant claims that the jury instructions given for aggravated battery with a deadly weapon, self-defense and defense of another contain the same defects that amounted to reversible and incurable error in *State v. Parish*, 118 N.M. 39, 42–46, 878 P.2d 988, 991–95 (1994). Specifically, Defendant claims the aggravated battery instruction was erroneous because it failed to include unlawfulness as a necessary element of that crime when an issue of self-defense was properly raised. *See id.* at 42–44, 878 P.2d at 991–93 (finding similar error in voluntary manslaughter instruction); *State v. Johnson*, 122 N.M. 696, 703, 930 P.2d 1148, 1155 (1996) (finding similar error in aggravated assault instruction where issue of citizen's arrest was properly raised). Defendant also claims the instructions given to the jury regarding self-defense and defense of another were erroneous because the jury was not explicitly told that: (1) if it found credible evidence to support Defendant's claim that the shooting was in self-defense or defense of another, then the burden shifted to the State to refute this claim; and (2) if the State could not refute Defendant's claim beyond a reasonable doubt, then the jury was required to find Defendant not guilty. *See Parish*, 118 N.M. at 44, 878 P.2d at 993 (finding same error in self-defense instruction for justifiable homicide); *see also* NMUJI 1997, 14-5181 & -5182 (instructions for self-defense and defense of another involving nondeadly force revised to accord with *Parish*).

6. Before addressing the applicability of *Parish* to the jury instructions in the case at bar, we address three preliminary questions: (1) whether Defendant was required to preserve the jury instruction issues below; (2) whether this Court should apply the ruling in *Parish* retrospectively; and (3) whether this Court has the authority to modify the applicable UJIs in this case.

### 1. *Preservation of Error.*

7. Unlike the defendant in *Parish*, Defendant in the case at bar failed to object to the aggravated battery instruction and, in fact, tendered the instructions on self-defense and defense of another. The claim of error in these instructions was not raised in the docketing statement or calendar notices; it appeared for the first time in Defendant's Brief-in-Chief. Nonetheless, under our rules of criminal procedure, NMRA 1997, 5-608(A) & (D), and the doctrine of fundamental error, the use of a jury instruction that omits an essential element of the offense can be grounds for reversal even when the omission was caused by the defendant's own actions.

*See State v. Osborne,* 111 N.M. 654, 661–62, 808 P.2d 624, 631–32 (1991) (reversing a conviction for criminal sexual contact of a minor); *State v. Kirby,* 122 N.M. 609, 611, 930 P.2d 144, 146 (1996) (reversing a conviction for involuntary manslaughter). The rationale behind this ruling is that "it is the duty of the court, not the defendant, to instruct the jury on the essential elements of a crime." *Osborne,* 111 N.M. at 662, 808 P.2d at 632.

■ 8. The State acknowledges the holding in *Osborne,* but argues that the fundamental error doctrine should not apply in this case because the evidence of Defendant's guilt is not so doubtful as to "shock the conscience." We are unconvinced by this argument for three reasons. First, in determining whether Defendant is required to preserve his · claim of error, the Court need not reach the fundamental error doctrine because this issue "may be resolved simply by resort to our Rules of Criminal Procedure." *Id.* at 661, 808 P.2d at 631 (citing Rule 5–608). Second, while it is true that Defendant abandoned the claim that his conviction was not supported by substantial evidence, the presence of such substantial evidence alone does not render the error harmless. *See State v. Hennessy,* 114 N.M. 283, 289, 837 P.2d 1366, 1372 (Ct.App.1992), *overruled in part on other grounds by State v. Lucero,* 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). Given that there also was sufficient evidence to instruct the jury on self-defense and defense of another, we do not regard the error in the jury instructions as harmless or "peripheral." Moreover, because of the emphasis that the prosecutor placed on the jury instructions in his closing argument, there is a reasonable probability that the omission of an essential element in these instructions may have significantly affected the jury's deliberations. *Cf. Hennessy,* 114 N.M. at 289, 837 P.2d at 1372. Finally, because "the orderly and equitable administration of justice *requires* that we correct any such error notwithstanding the defendant's responsibility for or complicity in the error," the Court would fail to do "substantial justice" if it allowed Defendant's conviction for aggravated battery to stand on a jury instruction that omitted the essential element of unlawfulness where self-defense and defense of another were at issue. *Osborne,* 111 N.M. at 662–63, 808 P.2d at 632–33. For these reasons, we address the claimed error in the jury instruction for aggravated battery with a deadly weapon notwithstanding Defendant's failure to object to this instruction at trial.

■ 9. If there was not a related error in the aggravated battery instruction, the ambiguous instructions regarding the State's burden of proof in refuting Defendant's claims of self-defense and defense of another might not be as grave an error. *Cf. State v. Kendall,* 90 N.M. 236, 243, 561 P.2d 935, 942 (Ct.App.) (failure to instruct jury on burden of proof required to sustain sentencing enhancement for use of a firearm is not fundamental error), *rev'd on other grounds,* 90 N.M. 191, 561 P.2d 464 (1977). However, because " 'instructions must be considered as a whole, and not singly,' " *Parish,* 118 N.M. at 41, 878 P.2d at 990 (quoting *State v. Crosby,* 26 N.M. 318, 191 P. 1079 (1920)), our concern about fundamental error in the aggravated battery instruction leads us to review the related instructions for self-defense and defense of another as well.

### 2. *Retrospective Application of Parish.*

■ 10. The State points out that the jury instructions in the case at bar were given two months before *Parish* was decided and argues that *Parish* should not apply retrospectively. Our Supreme Court recently addressed a similar question in *Kirby,* 122 N.M. at 610–11, 930 P.2d at 145–46, where the Court held that its ruling on an essential-elements instruction in *State v. Yarborough,* 122 N.M. 596, 930 P.2d 131 (1996), applied to a subsequent case in which a defendant was tried, convicted, and sentenced prior to the filing of the Court of Appeals' memorandum opinion in *Yarborough,* notwithstanding the fact that the defendant in *Kirby* had failed to raise or preserve the issue at the trial court level. In ruling that *Yarborough* applied to the jury instructions at issue in *Kirby,* the Court rejected the State's characterization of this application as retrospective, noting that cases are not final until there has been a

judgment of conviction, sentence, and exhaustion of rights of appeal. *Kirby*, 122 N.M. at 610–11, 930 P.2d at 145–46 (citing *State v. Rogers*, 93 N.M. 519, 521, 602 P.2d 616, 618 (1979)); *see also Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987) (stating the general principle that new rulings apply to all criminal cases pending on direct appeal at the time the new ruling is issued).

11. The Court's reasoning in *State v. Orosco*, 113 N.M. 780, 786, 833 P.2d 1146, 1152 (1992), suggests the same conclusion. Our Supreme Court reasoned that, even though the trial court in *State v. Trevino*, 113 N.M. 804, 833 P.2d 1170 (Ct.App.1991), followed its duty to use the applicable UJI in a trial that occurred before the Court's ruling in *Osborne*, 111 N.M. at 662–63, 808 P.2d at 632–33, rendered that UJI invalid for failure to include an essential element, "[t]his does not excuse omission of the element; reversal would be required if a defendant had been found guilty under an instruction which did not include an essential element of the crime and that element were in issue." *Orosco*, 113 N.M. at 786, 833 P.2d at 1152.

12. The jury instructions in the case at bar were given approximately two months before *Parish* was decided, but *Parish* was decided approximately six months before the trial court entered its final judgment and Defendant filed a direct appeal. We hold that under these circumstances, our Supreme Court's ruling in *Parish* applies to the case at bar.

3. *Authority to Modify UJIs.*

■ 13. The trial court in this case was required to use the applicable UJIs for aggravated battery with a deadly weapon, self-defense and defense of another. *See* SCRA 1986, General Use Note for Criminal UJIs, Judicial Pamp. 14, at 3 ("[W]hen a uniform instruction is provided for the elements of a crime, a defense or a general explanatory instruction on evidence or trial procedure, the uniform instruction must be used without substantive modification or substitution."). The trial court carefully followed this requirement, and the New Mexico Supreme Court has recognized the irony of reversing a

conviction because a trial court used UJIs that the higher court itself had approved. *Parish*, 118 N.M. at 47, 878 P.2d at 996.

■ 14. Nonetheless, the adoption of a UJI "does not preclude this Court from insuring that the rights of individuals are protected[,]" and this Court is free to amend, modify or abolish UJIs that have not been specifically addressed by the Supreme Court on appeal. *Id.* (citing *State v. Wilson*, 116 N.M. 793, 867 P.2d 1175 (1994)); *see also State v. Rosaire*, 123 N.M. 250, 252, 939 P.2d 597, 599 (N.M.Ct.App.1996), *cert. granted*, 122 N.M. 578, 929 P.2d 269 (1996). We find that the New Mexico Supreme Court has not specifically addressed Defendant's claim of error in the UJI for aggravated battery with a deadly weapon, SCRA 14–322. *Cf.* NMUJI 1997, 14–322 (instruction remains the same in 1997). *But cf.* NMUJI 14–5181 & –5182, Use Note 1 (when self-defense or defense of another is at issue, add to essential elements instructions for the offense charged, "The defendant did not act in self defense" or "The defendant did not act in defense of _____"). Hence, we can consider these claims even if there is no departure from the applicable UJI.

■ 15. The same conclusion does not follow for the UJIs regarding self-defense justifying nondeadly force, SCRA 14–5181, or defense of another justifying nondeadly force, SCRA 14–5182. Although our Supreme Court did not directly address these instructions in *Parish*, the UJIs for self-defense justifying nondeadly force and defense of another have been revised to accord with *Parish*, and our Supreme Court has approved those revisions. *See* NMUJI 1997, 14–5181 & –5182. Hence, while we are free to depart from the old UJIs contained at SCRA 14–5181 and –5182, we are bound to follow the language regarding the burden of proof contained in NMUJI 1997, 14–5181 and –5182, because this language is the same as that required by our Supreme Court in *Parish*, 118 N.M. at 44, 878 P.2d at 993.

4. *Merits of Defendant's Jury Instruction Claims.*

16. The *Parish* Court found reversible error in both the UJI for voluntary man-

slaughter, SCRA 1986, 14–220, and the UJI for self-defense justifying a homicide, SCRA 1986, 14–5171. The voluntary manslaughter instruction was erroneous because it failed to include unlawfulness as a necessary element of that crime when an issue of self-defense was properly raised. *Parish*, 118 N.M. at 44, 878 P.2d at 993. This error was not cured by giving a separate instruction for self-defense. *Id.* Indeed, the instruction given for self-defense justifying a homicide also was erroneous because "[t]he jury was not explicitly told that if it found credible evidence to support Parish's claim that the killing was in self-defense, the burden shifted to the State to refute this claim [and] if the State could not refute self-defense beyond a reasonable doubt, [the jury] was required to find Parish not guilty." *Id.*

17. More recently, the Court found reversible error in an essential-elements instruction for aggravated assault with a deadly weapon because that instruction did not include the requirement that the State prove beyond a reasonable doubt that the defendant was not attempting to make a citizen's arrest. *Johnson*, 122 N.M. at 703, 930 P.2d at 1155 (citing *Parish*, 118 N.M. at 44–45, 878 P.2d at 993–94). The Court construed the defendant's claim that an assault was justified because of his right to make a citizen's arrest as a challenge to the essential element of unlawfulness, thus necessitating an instruction on this essential element. *Id.*

18. The same defects are present in the jury instructions given in the case at bar. First, "unlawfulness" is an element of aggravated battery with a deadly weapon, *see* NMSA 1978, § 30–3–5 (Repl.Pamp.1994), yet the jury instruction upon which Defendant's conviction was premised did not include as an essential element a finding that Defendant's act was unlawful. Because unlawfulness also is an essential element of the crime of aggravated battery when an issue of self-defense is properly raised, the jury instruction for aggravated battery used in the case at bar was erroneous under the reasoning adopted in *Parish* and *Johnson*. Because this error in the essential-elements instruction was clear and unambiguous, it could not be cured by the presence of separate instructions for self-defense and defense of another. *See Parish*, 118 N.M. at 44, 878 P.2d at 993 (where omission of essential element from voluntary manslaughter instruction was not ambiguous, this error could not be cured by separate instruction on self-defense).

19. There are two recognized exceptions to the rule requiring the trial court to instruct the jury on the essential element of unlawfulness. The first exception applies to an essential-elements instruction containing language that is obviously synonymous with the element of unlawfulness, such as where the instruction uses the words, "did not act in defense of himself or others," in place of the words "acted unlawfully." *See State v. Loera*, 122 N.M. 641, 645, 930 P.2d 176, 180 (1996); NMUJI 1997, 14–5181 & – 5182 Use Note 1. The second exception is "where an element omitted from the instructions was not factually in issue." *Orosco*, 113 N.M. at 783, 833 P.2d at 1149.

20. Neither of these exceptions applies to Defendant's case. The jury instruction regarding aggravated battery did not contain any language that could be construed as synonymous with the element of unlawfulness. Moreover, the trial court specifically found that there was sufficient evidence to support the jury instructions on self-defense and defense of another after considering the State's objections. The issue of the sufficiency of the evidence supporting the defense instructions was not raised by the State on appeal. Hence, self-defense and defense of another were at issue in Defendant's trial, and the jury should have been instructed regarding the element of unlawfulness needed to sustain a conviction for aggravated battery with a deadly weapon. We disagree with the dissent's characterization of the defenses of self-defense and defense of another, under the facts of this case, as "side issues."

21. A second, related error appears in the last sentences of the jury instructions for self-defense and defense of another used in the case at bar. These sentences contain language that is identical to the language that was found to be ambiguous in *Parish*. The allocation of proof

regarding the issues of self-defense and defense of another is the same in both justifiable homicide and nondeadly force cases. *Compare Parish*, 118 N.M. at 44–45, 878 P.2d at 993–94 (in justifiable homicide case, defendant does not have burden of proving that killing was exercise of right of self-defense; burden of proof is on state) *with* SCRA 14–5181 committee commentary (if defendant produces evidence of self-defense which raises a reasonable doubt in minds of jurors, then burden is on state to prove beyond a reasonable doubt that assault or battery was not justifiable) *and* SCRA 14–5182 (1981 amendments made defense of another instruction consistent with self-defense instructions); *see also* NMUJI 1997, 14–5181 & –5182 (instructions for self-defense justifying nondeadly force and defense of others justifying nondeadly force revised to accord with *Parish* ). In this case, as in *Parish*, 118 N.M. at 45–46, 878 P.2d at 994–95, the ambiguity was not cured by another instruction. Hence, the jury instructions for self-defense and defense of another used in the case at bar are erroneous under *Parish*.

## III.  CONCLUSION

22.  For the foregoing reasons, we reverse and remand for a new trial at which the jury instructions for aggravated battery with a deadly weapon, self-defense and defense of another must be corrected to accord with our Supreme Court's instructions in *Parish* and NMUJI 1997, 14–5181 and –5182.

23.  **IT IS SO ORDERED.**

WECHSLER, J., concurs.

HARTZ, C.J., dissents.

HARTZ, Chief Judge, dissenting.

(24)  I respectfully dissent.

(25)  The jury was properly instructed on the elements of the offense. In particular, it was told that it could not convict Defendant if he had acted in self-defense or defense of another. The sole problem with the instructions is that they did not explicitly inform the jury regarding the burden of persuasion on those defenses. If the district court had refused an instruction tendered by Defendant to clarify the burden of persuasion, such refusal would have been reversible error. *See State v. Parish*, 118 N.M. 39, 878 P.2d 988 (1994). Here, however, the instructions given by the court regarding self-defense and defense of another were the instructions tendered by Defendant. Because the error alleged on appeal was not preserved in the district court, the question before this Court is whether the challenged instructions created fundamental error—that is, whether instructions caused a miscarriage of justice. In the specific circumstances of this case, particularly given that self-defense was such a minor, almost inconsequential, component of the Defendant's theory of the case, I do not believe that the error here was fundamental.

(26)  The irony of this case is that the challenged instructions were Uniform Jury Instructions (UJIs) that had been promulgated by our Supreme Court. Three instructions are pertinent. First, the elements instruction, taken from SCRA 1986, 14–322:

> For you to find the defendant guilty of Aggravated Battery With a Deadly Weapon, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.  The defendant shot Joe Leal with a shotgun;
>
> 2.  The defendant intended to injure Joe Leal, or another;
>
> 3.  This happened in New Mexico on or about the 29th day of August, 1993.

Then, the self-defense instruction, taken from SCRA 1986, 14–5181:

> Evidence has been presented that the defendant acted while defending himself.
>
> The defendant acted in self-defense if:
>
> 1.  There was an appearance of immediate danger of bodily harm to the defendant as a result of the aggressive behavior of the crowd gathering around the defendant; and
>
> 2.  The defendant was in fact put in fear, by the apparent danger, of immediate bodily harm and fired a shotgun at the ground because of that fear; and

3. The defendant used an amount of force which he believed was reasonable and necessary to prevent the bodily harm; and

4. The apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.

In considering this defense, and after considering all the evidence in the case, if you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.

Finally, the defense-of-another instruction, taken from SCRA 1986, 14–5182:

Evidence has been presented that the defendant acted while defending another person.

The defendant acted in defense of another if:

1. There was an appearance of immediate danger of bodily harm to Elias Acosta as a result of the aggressive behavior of the crowd gathering around the defendant; and

2. The defendant believed that Elias Acosta was in immediate danger of bodily harm from that aggressive crowd and fired the shotgun to prevent the bodily harm; and

3. The defendant used an amount of force which he believed was reasonable and necessary to prevent the bodily harm; and

4. The apparent danger to Elias Acosta would have caused a reasonable person in the same circumstances to act as defendant did.

In considering this defense, and after considering all the evidence in the case, if you have a reasonable doubt as to the defendant's guilt, you must find him not guilty.

(27) The first instruction is deficient in one respect. The pertinent statute defines "aggravated battery" as "the *unlawful* touching or application of force to the person of another with intent to injure that person or another." NMSA 1978, § 30–3–5(A) (Repl. Pamp.1994) (emphasis added). The instruction, however, says nothing about the re-quirement that the touching or application of force be "unlawful." Our Supreme Court has held that the jury must be instructed on the element of unlawfulness if the evidence at trial would support a reasonable doubt concerning whether the defendant had acted lawfully. *See State v. Orosco,* 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992); *cf. State v. Livernois,* 123 N.M. 128, ¶ 15, 934 P.2d 1057 (1997) (no fundamental error in failing to instruct on element of crime when there could be no dispute that element was established).

(28) Yet, even when the lawfulness of the defendant's actions is factually at issue, the jury instruction need not use a form of the word "unlawful." It is sufficient if the instruction refers only to the defendant's specific theory of why the alleged misconduct was lawful. For example, in *State v. Loera,* 122 N.M. 641, 644–45, 930 P.2d 176, 179–80 (1996), our Supreme Court held that the trial court adequately instructed on the element of unlawfulness by including as an element of the crime that the defendant "did not act in defense of himself or others."

(29) In this case the elements instruction referred to neither "unlawfulness" nor "self-defense." Nevertheless, "instructions must be considered as a whole, and not singly." *Parish,* 118 N.M. at 41, 878 P.2d at 990 (citation omitted). In *Clarke v. United States,* 132 F.2d 538 (9th Cir.1942), *cert. denied,* 318 U.S. 789, 63 S.Ct. 992, 87 L.Ed. 1155 (1943), a federal appellate court held that there was no error when an element missing from the instruction on mail fraud was contained in a separate instruction. Likewise, so long as the jury is instructed that it cannot convict a defendant who acted in self-defense, it is not necessary that the instruction on this point be contained in the general elements instruction.

(30) I recognize that our Supreme Court wrote the following in *State v. Clifford,* 117 N.M. 508, 511, 873 P.2d 254, 257 (1994): "We reiterate our holding in *[State v.] Bunce* [116 N.M. 284, 861 P.2d 965 (1993)] that the failure to include an essential element in the elements instruction can never be corrected by including the concept elsewhere in the instructions." But the sentence is dictum,

and I question whether the Court intended what the sentence appears to say. After all, in *Clifford* itself the Court found that none of the instructions adequately told the jury that the prosecution needed to prove fraudulent intent. It did not need to consider what would result if a separate instruction supplied an omission in the elements instruction. Moreover, I can find nothing in *Bunce* to support the proposition for which it is cited in the above-quoted sentence in *Clifford*. On the contrary, *Bunce* stated that if "the embezzlement and intent instructions do not adequately define the requisite intent, Defendant was entitled to an instruction on mistake of fact." 116 N.M. 284, 288, 861 P.2d 965, 969 (1993). This language suggests that an omission in the elements instruction for embezzlement or in the instructions regarding intent could be cured by a separate instruction on the defense of mistake of fact. I am confident that the Supreme Court would not find error in the omission of an element from the elements instruction if the jury receives a separate correct instruction regarding the omitted element.

(31) In Defendant's trial the jury was instructed on self-defense and defense of another. These instructions supplied the element of unlawfulness missing from the elements instruction. Thus, the issue on appeal is not the failure to instruct on all essential elements. Rather, the concern is whether the jury was informed regarding the burden of persuasion. As pointed out in *Parish*, in which the jury instructions were essentially the same as in this case, the former UJIs are ambiguous. *See* 118 N.M. at 44, 878 P.2d at 993. The instruction tendered by the defendant in *Parish*, and the present UJIs promulgated by our Supreme Court, are clearly superior in communicating the State's burden to negate self-defense and defense of another beyond a reasonable doubt.

(32) It must be emphasized, however, that the problem with the former UJIs—the ones used in *Parish* and in this case—is that they are imprecise, not that they affirmatively misstate the burden of persuasion. The former UJIs were not predicated on a misunderstanding of the pertinent law. *Parish* noted that New Mexico law has long been settled that the State must negate self-defense beyond a reasonable doubt, and the committee that drafted the challenged UJI on self-defense understood the State's burden. *See id.* at 44–45, 878 P.2d at 993–94. Consequently, I find it significant that the UJIs challenged in *Parish* were promulgated in 1986, yet no complaint was reviewed by our Supreme Court until 1994. *See id.* at 45, 878 P.2d at 994. At the least, the weakness in the former UJIs, although clear when one's attention is directed to the problem, was not glaring to practitioners or to the members of the UJI committee. This fact may not be pertinent to whether error occurred, but it is suggestive of the absence of *fundamental* error. "The doctrine of fundamental error is invoked when a court considers it necessary to avoid a miscarriage of justice." *State v. Alingog,* 117 N.M. 756, 760, 877 P.2d 562, 566 (1994). I question whether instructing a jury in accordance with the former UJIs would, in itself, necessarily create a miscarriage of justice. *Cf. State v. Kendall,* 90 N.M. 236, 242–43, 561 P.2d 935, 941–42 (Ct.App.) (failure to instruct on burden of proof was not fundamental error), *rev'd in part on other grounds,* 90 N.M. 191, 561 P.2d 464 (1977).

(33) I am not suggesting that the instructions in this case could never create fundamental error. Whether or not they did depends upon the specific circumstances of the trial. For example, if the prosecutor had argued that the defendant had the burden of establishing self-defense, then the ambiguity in the instructions would ordinarily result in fundamental error. But that is not what happened here. On the contrary, the State's final argument suggested that the jury needed to find beyond a reasonable doubt that Defendant did not act in self-defense. The prosecutor said:

Well, again, proof beyond a reasonable doubt is not proof beyond a shadow of a doubt, it's not proof beyond all doubt, it's proof beyond a reasonable doubt. The analogy that is favored that I use with juries as far as a reasonable doubt in a tough situation, is where you have your tax, you're about to send into Uncle Sam, you're about to sign off on it, and you're about to sign that little line that says I

hereby certify that everything is true and correct to the best of my knowledge and ability. Well, ladies and gentlemen, if you can say to your best of knowledge and ability that the defendant did these crimes and he didn't act in self-defense, which clearly that he, it was clear that he didn't, then you must find the defendant guilty.

(34) Moreover, in sharp contrast to *Parish*, where self-defense was apparently the chief issue at trial, self-defense and defense of another were, at most, side issues in this trial. Defendant's principal defense was that he did not intend to shoot the victim. The following passage indicates the thrust of Defendant's final argument and reveals how peripheral the challenged instructions were:

So did he intend to shoot Joe Leal? No. Did he intend to shoot another? No. Did he intend to shoot? I guess he intended to pull the trigger and scare them away. Had he wanted to shoot Joe Leal or another, I suspect he could have done a pretty good job of it. No, *it was not his intention to hurt anyone,* ladies and gentlemen, *and that is what is the basis of this trial.* Instruction number 3, element number 2. This is what we call the specific intent element. The defendant intended to injure Joe Leal or another.

The next instruction is a general intent instruction. And we got this defense-of-another instruction. Self-defense instruction. You can all read those [several words inaudible].

And you probably all have children. And you probably have a good idea as to when people are being level with you, trying to be level with you, when people are being evasive.... (Emphasis added.)

Defendant's final argument contained no other reference to the instructions on self-defense or defense of another.

(35) I agree with the majority that it was unfortunate that the UJIs were ambiguous. But I disagree that they caused a miscarriage of justice in this case. The prosecutor's final argument properly resolved any ambiguity in the instruction by indicating to the jury that they could not convict unless they were convinced beyond a reasonable doubt that Defendant did not act in self-

defense. In addition, Defendant's own final argument suggested that self-defense and defense of another were not being pressed by Defendant as grounds for acquittal. I would affirm the conviction below.